Argued and submitted October 8, reversed and remanded with instructions on appeal; affirmed on cross-appeal December 9, 1998

Otto T. ROTH
and Joan L. Roth,
husband and wife,
*Respondents - Cross-Appellants,*

*v.*

Eugene L. GARNER
and Helen C. Garner,
husband and wife,
*Appellants - Cross-Respondents.*

(95-0554-E-1; CA A100394)

970 P2d 675

Richard A. Stark argued the cause for appellants - cross-respondents. With him on the briefs was Stark and Hammack, P.C.

Thomas F. Armosino, Jr., argued the cause for respondents - cross-appellants. On the brief were W. V. Deatherage, John R. Huttl and Frohnmayer, Deatherage, Pratt, Jamieson, Clarke & Moore, P.C.

Before Riggs, Presiding Judge pro tempore, and Deits, Chief Judge, and Wollheim, Judge.

DEITS, C. J.

## DEITS, C. J.

Plaintiffs Roth brought this declaratory judgment action against defendants Garner seeking a declaration that the ingress and egress easement, that the Garners agreed to develop and grant to the Roths' predecessors (the Pierces) in a 1965 land sale contract, is 70 feet wide. The Roths also sought to enjoin the Garners from fencing or otherwise obstructing "any portion of the easement." The Garners interposed affirmative defenses of claim and issue preclusion, asserting that the width of the easement was established at 20 feet in one or both of two earlier litigations and that the alleged obstructions were outside the easement area. The trial court found that the judgments in the earlier litigations had "established a 20 foot wide, non-exclusive easement for ingress and egress[.]" However, the court nevertheless ordered that, in addition to the 20-foot wide "finished grade of the roadway," 10 feet should be added for shoulders and ditches on both sides and that the "total [easement] * * * is 40 feet." The court enjoined each party from interfering with the other party's use and enjoyment of the [easement]," and from placing "obstructions, fences or barriers" within the 40-foot area.

The Garners appeal, contending that the trial court erred in rejecting their preclusion defenses and by adding the two 10-foot sides to the previously adjudicated 20-foot width of the easement. The Roths cross-appeal, arguing that the court erred by failing to hold that the easement required by the 1965 contract was 70 feet in width. We reverse on the appeal and affirm on the cross-appeal.

We state the facts only in the detail necessary to an understanding of what we regard as the decisive issues before us. The Garners agreed to establish the roadway easement in the 1965 contract, through which they sold the benefitted real property to the Pierces. The Roths later purchased the property. In 1973, the Pierces brought an action against the Garners, seeking to require them to complete the easement pursuant to the contract. The litigation resulted in a stipulated decree that required the Garners to complete the roadway and provided that "the finished grade of the roadway be * * * twenty feet in width[.]" In 1991, the Garners

sued the Roths after a number of reciprocal grievances between the parties arose. The Roths made counterclaims in that action, seeking relief against the Garners for various infractions and interferences with the easement and alleging the existence of a "dispute between the parties as to the nature of the road that provides access to [the Roths'] property." The 1991 litigation culminated in a mutual "release of all claims" by the parties[1] and a stipulated final judgment by the court. That judgment provides, in material part, that the Roths

"have the right to use the road known as Garner Road, which provides access to their property, which easement was established as 20 feet wide in the proceeding known as Pierce v. Garner, Jackson County Circuit Court Case No. 73-709-E."

The Roths brought the present action in 1995. They alleged, *inter alia*:

"Plaintiffs contend that the court, in the 1994 judgment [deciding the 1991 action], in referring to the easement as being 20 feet wide being established in the proceeding of Pierce v. Garner, Jackson County Circuit Court Case Number 73-709-E, was referring only to the finished grade of said roadway as being limited to 20 feet. The plaintiffs contend that the private way has an additional 50 feet for shoulders and ditches. Defendants should be enjoined from interfering and fencing said area, which restricts plaintiffs' use to expand their entry way to their property and to use the shoulder and ditches appurtenant to the finished grade of the way."

The relief that the Roths sought was "a decree holding that said private way is 70 feet in width, [and] that defendants be barred and enjoined from in any way placing any fence, obstructions, or barricades on any portion of the private way[.]" The trial court proceedings resulted in the judgment earlier described.

---

[1] The release is the basis for another affirmative defense by the Garners in this action. Given the grounds for our decision, it is not necessary for us to reach the parties' arguments about the release. In view of the issues that we find decisive, it is important to emphasize that the Roths, as well as the Garners, *made* claims in 1991.

The Garners assign error to the trial court's failure to bar "the [Roths'] claim under the doctrine of * * * claim and issue preclusion." That assignment also implicitly challenges the court's decision to add 10 feet to both sides of the 20-foot area that, according to the Garners, was established as the width of the easement in the earlier actions. The Garners rely on the doctrines of claim and issue preclusion and assert that the Roths' claims in this action generally and their claim to an easement greater than 20 feet in width specifically are barred under those doctrines.

The principle of "issue preclusion" was summarized by the Supreme Court in *North Clackamas School Dist. v. White*, 305 Or 45, 53, 750 P2d 485, *mod* 305 Or 468, 752 P2d 1210 (1988), where it stated that "[i]f a claim is litigated to final judgment, the decision on a particular issue or determinative fact is conclusive in a later or different action between the same parties if the determination was essential to the judgment." In *Drew v. EBI Companies*, 310 Or 134, 140, 795 P2d 531 (1990), the court described "claim preclusion":

"The claim preclusion branch of preclusion by former adjudication may be stated:

" '[A] plaintiff who has prosecuted one action against a defendant through to a final judgment * * * is barred [*i.e.*, precluded] * * * from prosecuting another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action.' *Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982).

"Claim preclusion applies equally to a defendant's defense. *See* Restatement (Second) of Judgments § 18. Claim preclusion does not require actual litigation of an issue of fact or law, as does issue preclusion. Nor does it require that the determination of the issue be essential to the final or end result reached in the action, claim, or proceeding. However, claim preclusion requires that specified characteristics be present in the former action or proceeding before the determination is conclusive on the parties in the future. The

opportunity to litigate is required, whether or not it is used. Finality is also required. * * * Where there is an opportunity to litigate the question along the road to the final determination of the action or proceeding, neither party may later litigate the subject or question."[2]

■   In essence, the Roths sought two forms of relief in this action. The first was a declaration that the 20-foot width specified in the earlier judgments refers only to the "finished grade" of the easement but that the easement as a whole under the 1965 contract is 70 feet in width. We conclude, however, that the entire easement was determined in the earlier cases and cannot be relitigated here, by force of *both* issue preclusion and claim preclusion. Although the 1973 judgment is arguably ambiguous on the point, the judgment in the 1991 action is not. The plain language of that judgment states without qualification that the judgment in the 1973 case established a 20-foot wide easement. Thus, the second judgment both construes the first as so holding and also reiterates that holding as its own.

The Roths offer a number of theories to escape the conclusion that their claim is barred insofar as it relates to the width of the easement. They argue first:

> "Issue preclusion does not bar plaintiffs' suit because in this case plaintiffs seek to enforce their rights in the entire 70-foot width of the private drive. Issue preclusion only applies to issues that have actually been finally decided between parties. Here, these parties have never litigated the issue of plaintiff's rights to the entire roadway width."

We disagree. The judgment resulting from the 1991 litigation clearly stated that the width was 20 feet; hence, it was not 70 feet, and the fact that the Roths did not have rights in the additional area was actually and finally decided in the earlier cases. Moreover, the determination was "essential" to both judgments. Both actions related to rights in or interferences with the easement area, and the area was necessarily defined as part of the adjudication of the actions.

---

[2] The judgments in both the 1973 and the 1991 actions are "final" for purposes of both doctrines. To whatever extent "privity" is still a material consideration in connection with either doctrine or both, the Pierces and the Roths come within it.

■ The Roths also contend that the claim preclusion doctrine should not apply here. They argue that the transactions involved in the earlier actions and in this one differ, because

> "[i]n the prior proceeding, the facts were that the Garners were installing poles and gates on the 20-foot improved portion of the private way, and that such poles and gates were interfering with the Roth's use of the 20-foot wide improved section of the way. In the present action, the facts are that the Garners are now otherwise interfering with the Roth's rights to the unpaved 50 feet of remaining width of the way. The present facts *were not part of the prior factual transaction*, therefore claim preclusion does not bar plaintiff[s'] claims. (Emphasis the Roths'.)

Insofar as it relates to the width of the easement, that argument fails for reasons similar to those that defeat the Roths' issue preclusion argument. The issue of the width not only could have been, but was, litigated in the prior actions. The fact that some or all of the Garners' present alleged activities are occurring outside the easement area defined in the earlier judgments does not make those judgments any less conclusive as to what that area is; it simply means that the Roths are now making a claim that seeks or presupposes rights in an area that exceeds and is outside the Roths' previously adjudicated easement rights. That is *exactly* what claim preclusion prevents a party from doing.

■ The Roths also assert that, under *Peterson v. Temple*, 323 Or 322, 918 P2d 413 (1996), the "transactional" approach to the claim preclusion doctrine applies only prospectively, and it therefore should not be applied to the current action. The Roths reason that, when they "filed their counterclaim in the 1991 action, joinder was permissive, not mandatory"; consequently, any failure on their part to assert claims in 1991 of the sort they made here does not preclude them from pursuing those claims now. However, the Roths misread *Peterson*. The court held in that case that the so-called transactional formulation, which it had adopted in several earlier cases as the general approach in applying the claim preclusion doctrine, should be extended specifically to encompass claims based on personal injury and property damage resulting from the same incident. However, because

the specific way in which the general approach was extended in *Peterson* was directly contrary to an earlier Supreme Court decision, the court held that the extension of the rule should be applied prospectively only. This case does not involve claims for personal and property injury arising from an accident, and it therefore does not come within the narrow category of cases to which the "prospective application" limitation under *Peterson* applies. The claims involved in the 1973, the 1991, and the present cases, are of the general kind that, as the court in *Peterson* noted, had been subject to the transactional approach to claim preclusion since its decision in *Dean v. Exotic Veneers, Inc.*, 271 Or 188, 531 P2d 266 (1975).

■■ Finally, the Roths appear to argue that the preclusion doctrines do not disallow a party from seeking an interpretation of an earlier judgment in a subsequent litigation.[3] There are some appropriate occasions in which the declaratory judgment procedure, and perhaps others, can be used to obtain an interpretation of a judicial action. This is not one of those occasions. The judgment in the 1991 action construed the 1973 judgment with respect to the issue in question, and the later judgment is beyond any need for further clarification. The claim and issue preclusion doctrines would be wholly defeated if the supposedly preclusive judgments were open to endless subsequent litigation ostensibly aimed at interpreting them.

We hold that all claims by the Roths and the Garners that were or could have been litigated in the 1973 or the 1991 action are barred. Specifically, the width of the easement was conclusively decided in the earlier actions, and the Garners are correct in contending that the trial court erred by increasing the width beyond 20 feet in the present judgment. It also follows that the court did not err by rejecting the Roths' claim that the width of the easement should be fixed at 70 feet. We therefore reject their contrary assertion in the cross-appeal.

---

[3] Indeed, the Roths also appear to suggest in their brief that the court's *intent* "to bar the present action" in the earlier one is relevant to the preclusion questions. It is not. No court can foresee future attempts to relitigate the issues and claims that it is currently deciding. The preclusion doctrines turn on the effect of prior adjudications, not the mental state of the adjudicators.

As noted earlier, the Roths sought two forms of relief in this action. In addition to a declaration concerning the width of the easement, they also asked for injunctive relief against the Garners' activities that allegedly obstructed or interfered with the Roths' use of the easement. In the latter connection, they alleged that, after the entry of the judgment in the 1991 action, the Garners

> "have since proceeded to fence a portion of the private way between the 20 foot finished portion of the way lying west and the boundary of plaintiffs' property for no purpose other than to annoy and harass the plaintiffs. On the westerly portion of said private way, defendants have placed logs preventing the use of the shoulder next to the finished grade of said private way. Defendants' fencing and logs prevent the use of the ditches and shoulder of the way."

■ The analysis of that aspect of the Roths' action is not *quite* the same as the analysis that applies to their claim to a 70-foot wide easement, but the answer is the same. Neither issue nor claim preclusion would bar the Roths from seeking judicial enforcement of the earlier judgments or from seeking redress for interferences with the easement that occurred after those judgments became final, *if* the later events were separable from the facts that were adjudicated in the previous actions. However, that is not the case here. All of the interferences that the Roths sought to enjoin in this action allegedly occurred in *and* affected only the use of areas adjacent to but outside the 20-foot width of the easement as established by the 1973 and 1991 judgments. In other words, the alleged activities *could* be actionable only if the easement extended beyond the previously and conclusively adjudicated dimension that the Roths were barred from relitigating. We accordingly conclude that they were not entitled to the injunctive relief that they sought, and that the court erred by granting it to them.

On appeal, reversed and remanded with instructions to enter judgment for defendants; affirmed on cross-appeal.